COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Bray and Overton
Argued at Norfolk, Virginia

MURRELL EDWARD PATRICK
                                        OPINION BY
v.        Record No. 1372-97-1      JUDGE JOSEPH E. BAKER
                                        JUNE 30, 1998
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                John M. Folkes, Judge

        Charles E. Haden for appellant.

        Leah A. Darron, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


        Murrell Edward Patrick (appellant) was convicted in a bench
trial in the Gloucester County Circuit Court (trial court) of
statutory rape in violation of Code § 18.2-61.  On appeal, he
contends the trial court erroneously (1) qualified a witness with
no expertise in population genetics to testify as a DNA expert,
(2) admitted DNA evidence for which proof of the chain of custody
was lacking, (3) failed to appoint a DNA expert to help him
prepare his defense, resulting in a fundamentally unfair trial,
(4) denied his motion to reconsider based on a certificate of
analysis allegedly showing the presence of DNA from a third
person on the victim's body, and (5) found the evidence
sufficient to prove penetration.  For the reasons that follow, we
affirm the conviction.

        At about 4:30 a.m. on September 28, 1996, Deputy Dennis
Dowling responded to a specified address in Gloucester County to

investigate a domestic disturbance.  When he arrived, he found appellant and appellant's girlfriend, Mary, arguing in the front yard.  Mary's eleven-year-old sister (victim) and their mother came out of the house.  "[Victim's] clothes were very disheveled, her pants were hanging down, and . . . [she was] screaming that [appellant] had raped her. . . .  She was clinging to her mother, extremely shaken, hysterically crying, barely coherent, but she kept screaming over and over that [appellant] had done this to her."[1]  Deputy Dowling told appellant he was under arrest; appellant fled on foot, but Dowling wrestled him to the ground and sprayed him with "Cap stun," a mucous membrane irritant, to subdue him.

Appellant was taken to the police station, where he waived his constitutional rights and agreed to make a statement.  When asked if he raped victim, he said he did not rape anyone.  When asked whether he had intercourse with victim, appellant replied, "She's eleven years old.  I'm not saying anything."

Victim was taken to the hospital, where Dr. Villamer Parilla used a physical evidence recovery kit (PERK) to collect samples from inside and outside victim's vagina.  The swabs provided for this purpose were sealed in separate, properly-labeled envelopes provided with the PERK, initialled, sealed in a box, and given to

---

[1]Appellant objected on hearsay grounds when Officer Dowling testified to this out-of-court statement, but the trial court admitted the statement as an excited utterance.  On appeal, appellant has not assigned error to the admission of the statement.

Investigator Randy Oakley at the hospital.  Blood, hair and saliva samples taken from appellant in Oakley's presence were sealed, initialled, and given to Oakley.  Oakley placed the sealed evidence kits in the unlocked refrigerator in the department's crime lab and sealed the refrigerator "in evidence tape with [his] initials to make sure that no one else went into the refrigerator."  Oakley retrieved the kits on October 3, 1996. Although several other people had access to the crime lab, Oakley could observe from the individual packages that their contents had not been tampered with during the time they were in the refrigerator.

Jeffrey Ban, the section chief in charge of DNA testing at the state's Division of Forensic Science laboratory, performed RFLP DNA analysis of the "vaginal/cervical" swabs taken from victim and the blood taken from appellant.  Ban qualified as an expert without objection from appellant.  Ban explained the process of collecting and analyzing evidence and concluded that appellant could not be eliminated as the contributor of the seminal fluid found in victim's vagina.  He testified that appellant's DNA profile was "extremely rare" and that only one or two other people in the United States would have it, providing a likelihood of less than one in 100 million that a caucasian male other than appellant could have contributed the seminal fluid. The certificate of analysis Ban prepared was admitted into evidence without objection.

On cross-examination, Ban said he assumed the swabs he tested came from inside victim's vagina "[b]ecause the swab that I actually received . . . was marked on the envelope [in which my laboratory associate Barbara] Llewellyn repackaged the evidence and sent it to me as a vaginal/cervical swab."  Llewellyn had previously opened the envelope to perform a PCR DNA test.  Ban testified that the PCR test is used as a screening test and when, as here, it does not eliminate a defendant, it is followed by the more discriminating RFLP DNA test.  Llewellyn's certificate of analysis was not admitted into evidence, but Ban testified that it confirmed the presence of spermatozoa on victim's thighs and external genitalia, as well as in her vaginal/cervical smears.  Ban analyzed only the vaginal/cervical swabs.

Victim testified at trial but refused to give any testimony against appellant.  She testified that appellant was living with victim's adult sister, Mary, who, according to appellant's attorney, was carrying appellant's baby at the time of trial.

Appellant moved to strike the Commonwealth's evidence.  He argued that proof of sperm in victim's vagina without other evidence of penetration was insufficient to prove rape because "there can be an ejaculation externally with sperm entering the vagina."  The trial court denied the motion and convicted appellant of rape.

After sentencing, appellant filed a motion to reconsider based on a certificate of analysis of the initial DNA test, a PCR

test, not introduced by the Commonwealth at trial. He contended the initial DNA test, performed by forensic scientist Barbara Llewellyn, had concluded that "the DNA profile obtained from the non-sperm fraction of the pubic area swabs of the victim (Item 2) was consistent with a mixture of the DNA profiles of [appellant, victim], and a third individual." Appellant conceded that the certificate of analysis containing these results had been introduced into evidence at the preliminary hearing. At trial, appellant's counsel used a portion of Llewellyn's PCR DNA test results while cross-examining DNA expert Ban, but did not question Ban regarding the portion of the certificate showing the possible presence of bodily fluids from a third person. The PCR certificate was never offered into evidence at trial. The trial court denied the motion, and this appeal followed.

## Procedural Bar

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18 applies to bar even constitutional claims. See Deal v. Commonwealth, 15 Va. App. 157, 161, 421 S.E.2d 897, 900 (1992).

> The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the

- 5 -

objection at that stage of the proceeding.

Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted).

"[T]he ends of justice exception is narrow and is to be used sparingly . . . ." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

Appellant concedes that his trial counsel failed (1) to object to the trial court's qualifying Ban as an expert witness on DNA, (2) to object to the admission of the DNA test results into evidence, and (3) to request the appointment of a DNA expert to assist in the preparation of his defense. He contends, however, that the ends of justice exception should be applied to permit our consideration of these issues. We disagree. The record does not show affirmatively that a miscarriage of justice occurred and, therefore, provides insufficient grounds for invocation of the ends of justice exception.

## Motion to Reconsider

We also conclude that the trial court did not err in denying appellant's motion to reconsider. That motion was based on the claim that the PCR DNA test result "obtained from the non-sperm fraction of the pubic area swabs of the victim (Item 2) was

- 6 -

consistent with a mixture of the DNA profiles of [appellant, victim], and a third individual."  However, as appellant's counsel on appeal admitted, appellant's trial counsel did not offer that test result into evidence at trial and did not cross-examine the Commonwealth's DNA expert on that information, despite the fact that the certificate previously was introduced at appellant's preliminary hearing.

Moreover, even if the trial court had agreed to consider this evidence, it would not have changed the result.  We interpret the certificate to show that genetic material from a third party was found on appellant's pubic area swabs, rather than on those of victim, as appellant contends.  The PCR certificate of analysis shows the DNA of a third person on "the pubic area swabs."  Those swabs are referred to as coming from "Item 2," and Item 2 is identified elsewhere in the certificate as appellant's PERK rather than victim's, which is Item 1.  Furthermore, that DNA came from "the non-sperm fraction" of the "pubic area swabs," which indicates that the gender of the third person is unknown and, statistically speaking, that it was just as likely to have come from a woman as from a man.  Accordingly, the evidence, if accepted, would have shown, at most, that a third person of unknown gender had some sexual contact with appellant, not with victim.

Therefore, we cannot conclude that the trial court abused its discretion in denying appellant's motion to reconsider.  See

- 7 -

<u>Murphy v. Commonwealth</u>, 246 Va. 136, 148, 431 S.E.2d 48, 55 (1993).

<u>Sufficiency of the Evidence to Prove Penetration</u>

Although appellant concedes that the evidence proved he had some sexual contact with victim, he contends it was insufficient to prove penetration, a necessary element of rape.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it. See <u>id.</u> The credibility of a witness' testimony and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. See <u>Long v. Commonwealth</u>, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." <u>Coleman v. Commonwealth</u>, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." <u>Hamilton v. Commonwealth</u>, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact. See <u>Cantrell v. Commonwealth</u>, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). Penetration, like any other

element, "may be proved by circumstantial evidence and is not dependent on direct testimony from the victim that penetration occurred." Morrison v. Commonwealth, 10 Va. App. 300, 301, 391 S.E.2d 612, 612 (1990) (holding that although the victim never testified directly that penetration occurred, her testimony regarding sexual contact and doctor's testimony that some object penetrated her vagina were sufficient to prove accused guilty of rape).

Here, the circumstantial evidence was sufficient to prove penetration. Based on the DNA evidence introduced, the trial court was entitled to conclude that appellant's semen was found in victim's vagina and that it was deposited there when appellant "raped [victim]," which required him to penetrate victim's vagina with his penis.

Although appellant offers what he contends are reasonable hypotheses of innocence, we conclude that these hypotheses do not flow from the evidence. First, appellant contends his semen could have been deposited on appellant's external genitalia and could have been forced into victim's vagina when she was penetrated by a third person. Appellant's contention does not constitute a reasonable hypothesis of innocence flowing from the evidence because no evidence was introduced at trial regarding the possible presence on victim of genetic material from a third party. The certificate of analysis from the PCR DNA test is contained in the record only as an attachment to appellant's

motion to reconsider.  In addition, as discussed above, we interpret this evidence as showing genetic material from a third person of unknown gender on <u>appellant's</u> pubic area swabs, rather than on those of victim.  Therefore, such evidence would not have provided the foundation for a reasonable hypothesis of innocence if it had been admitted at trial.

Appellant also argues that sperm is highly motile and could independently have found its way into victim's vagina after being deposited by appellant outside the vagina.  Regardless of whether this is a medical possibility, appellant offered no evidence to this effect at trial; therefore, it does not constitute a reasonable hypothesis of innocence flowing from the evidence.

For these reasons, we affirm appellant's conviction.

<u>Affirmed.</u>