COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Duff and Overton
Argued at Alexandria, Virginia


JOSEPH JOHNSON, JR.

                                    MEMORANDUM OPINION* BY
v.    Record No. 0348-98-4          JUDGE CHARLES H. DUFF
                                         JUNE 22, 1999
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Benjamin N. A. Kendrick, Judge

           Leo R. Andrews, Jr., for appellant.

           Steven A. Witmer, Assistant Attorney General
           (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Appellant contends that the trial court erred in admitting a

copy of a prior order where the original was lost or destroyed.

Appellant also contends that the trial court erred in entering an

order on February 6, 1997, which vacated an earlier order.  For

the following reasons, we affirm appellant's convictions.

                                I.

             THE ORDERS IN CASES 93-321 and 93-322

                    A.   The 1993 Charges

     On March 23, 1993, appellant appeared before Arlington County

Circuit Court Judge Paul F. Sheridan on Case No. 93-321, charging

---

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

appellant with statutory burglary, a felony.[1]  Appellant, appellant's attorney (Evans), and the Commonwealth's attorney presented Judge Sheridan with a "plea agreement memorandum" under which appellant agreed to plead guilty pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to the lesser-included offense of misdemeanor unlawful entry.  In exchange for his Alford plea, the Commonwealth moved "to nol pros" Case No. 93-322, involving grand larceny.  Without objection, Judge Sheridan nolle prosequied Case No. 93-322.

B.  The Expungement Petition and June 16, 1995 Hearing

On May 3, 1995, appellant filed a motion for expungement in which he alleged the following:

> That your petitioner, Joseph Johnson, . . .
>
> . . . was arrested on the 11th day of January, 1993, by the County of ARLINGTON Sheriff's Department for "Statutory Burglary and Grand Larceny" . . . .
>
> 2.  That your petitioner, Joseph Johnson, was innocent of any and all charges aforesaid.
>
> 3.  That on the 23th day of March, 1993, in the General Circuit Court of the County of ARLINGTON, Virginia, the Commonwealth of Virginia, by her Attorney for the Commonwealth of the County of ARLINGTON moved for a nolle prosequi of said charges, which motion was granted by the Court at that time.

---

[1]The facts that follow are contained in a March 23, 1993 transcript that was made a part of the appellate record.

- 2 -

There are no transcripts or orders regarding the expungement proceeding. The only information about that proceeding is contained in the April 29, 1996 transcript from appellant's forgery trial. At that trial, Sheila Norman, "the Assistant Commonwealth Attorney who handles expungements usually," testified that, on June 16, 1995, she learned through a circuit court judge that appellant's "expungement proceeding was on the docket" to be heard that day. That was the first time Norman was advised of the petition. After hearing conflicting arguments from appellant and Norman, the trial judge denied appellant's petition for expungement.

C.  The Show Cause Hearing in Case No. 93-321

On June 16, 1995, the same date as appellant's expungement hearing, appellant appeared before Judge Sheridan regarding "a show cause letter dated March 9, 1995."[2] At that hearing, the Commonwealth asserted that appellant "still owes $1,500 in restitution." Appellant averred that his probation was transferred "from Virginia to Maryland" where he had "been making minimum payments of $50 to the probation officer" there.

Appellant stated, "And now that I am aware that this probation has expired as of March 23, [1995] Your Honor, I would

[2]A copy of the transcript of that hearing is contained in the appellate record.

- 3 -

be willing to - actually I'm in the position within the next 30 days to pay off whatever balance that exists."

The trial judge indicated that the Virginia probation office requested that appellant's probation be extended. He then ruled that he was "extend[ing] the probation to March 23, 1996 for lack of compliance" and because appellant's "probation conditions weren't carried out within the time period."

### D. The April 26, 1996 Forgery and Uttering Trial

On August 21, 1995, appellant was indicted for forging and uttering the order in Case No. 93-321, the order upon which appellant relied to expunge his record and the case in which Judge Sheridan extended probation two months earlier. The Commonwealth alleged that appellant visited the circuit court clerk's office on June 7, 1995, and stole the original orders from the file and the order book for Case No. 93-321 relating to his 1993 misdemeanor conviction. According to the Commonwealth, appellant prepared a forged order for Case No. 93-321 indicating that the charges were nolle prosequied. The Commonwealth alleged that appellant then substituted a photocopied forgery for the original conviction order when he returned the file to the clerk. At appellant's trial, because the circuit court had no original orders from which to make certified copies, the Commonwealth sought to admit a copy of the conviction order provided by appellant's probation officer.

- 4 -

Prior to the introduction of evidence at appellant's April 29, 1996 trial, appellant's attorney questioned how the Commonwealth intended to prove the contents of the original order that was allegedly stolen and replaced with a forgery. The Commonwealth explained that it intended to present a copy of the original order received from the file of appellant's probation officer, Carol Hawkins, and to establish its authenticity through the testimony of Hawkins and two circuit court assistants, Vickie Separis and Beth Davis.[3] In support, the prosecutor made the following assertion:

> [The copy of the original order] will be Exhibit No. 1. It is the actual conviction of the defendant. Our evidence would show that circumstantially the defendant took it and destroyed it. The way that I would prove to – intend to introduce it is because Vicki Separis recognizes it that this was the actual conviction order that had been in the file before it was given to the defendant.
>
> She also got a copy of – the copy that I am using was supplied by the probation office because they kept a file of his actual conviction order and then since then they have requested the book and page photographs entered from the Supreme Court and as I've gotten the actual conviction order and she has compared them, it is the same thing now. And I am going to use the presumption of regularity as to judicial

---

[3]On August 31, 1998, we denied part of appellant's petition for appeal in which he presented an argument regarding the admissibility of testimony from Separis and Davis, and ruled that "Code § 19.2-271 was not applicable" to bar their testimony at trial.

proceedings which apply here and the
presumption that this is accurate and true.

The Commonwealth's attorney further asserted that she was
"not trying to prove the contents" of the order.  Instead, she
merely intended to prove that appellant was convicted in Case
No. 93-321 and that the case was not nolle prosequied as
indicated in the alleged forgery.

Defense counsel objected, citing Code §§ 8.01-389(A) and
18.2-391(C) as methods and procedures by which the order might
be made admissible had the Commonwealth sought to do so.  The
prosecutor explained that the order could not be authenticated
and certified because "the original has been destroyed and they
can't" certify a copy.

Defense counsel pointed out the procedure in Code
§ 8.01-394 for proving lost records and argued that the
Commonwealth chose not to follow it.  Following a brief recess,
the following colloquy took place:

> THE COURT:  Is this the copy that you were
> referring to?  Have I been given –
>
> [THE PROSECUTOR]:  Your Honor, I was wrong.
> The defense attorney had it at the time, and
> when you asked if it had been certified, I
> thought that it had been.  It actually had
> – this is a copy that was given to the
> probation officer before all of this
> happened back in 1993 so that they could

start monitoring him and that was certified at the time – from the original.[4]

THE COURT: That changes things, doesn't it?

[DEFENSE COUNSEL]: Well, sir, if that order had a date – if the certification has a date, I would agree with this Court. But it doesn't have –

THE COURT: But [Code § 8.01-391]C doesn't say that. C doesn't say whether the original is in existence or not provided that such copy is authenticated as a true copy by the Clerk or Deputy Clerk of such Court and dated. It doesn't say that.

The trial judge ruled as follows:

Well, I think this document as certified[5] satisfies the statutory requirements and your objection is overruled, Mr. King, and your exception is noted.

The prosecutor then informed the trial court of other documents she intended to introduce for admission. She stated:

[T]he best way we should probably settle this issue of the exception, is I have a document that I will put in as Commonwealth's Exhibit No. 2, will be a photocopy of his actual nol pros order. That also – that is not certified. It is missing out of the – the original is missing out of the file I believe and so I would be introducing it not just based on its certification but because it is something

_____

[4]Contrary to statements in the trial transcript, the copy of the order provided by Hawkins and admitted as Commonwealth's exhibit 1, contained no certification, no attestation, or any indicia that it was a copy created from the original.

[5]As previously explained, there is no evidence that Commonwealth's exhibit 1 was certified. See supra note 4.

- 7 -

that has been recognized by the Clerk. The Clerk knows what it is.

Then the third thing I am going to be submitting is the fake order, the constructed order. And, of course, that can never be certified. It's false. It is just a piece of paper that was put in the file . . . .

The following exchange ensued:

[THE PROSECUTOR]: Your Honor, if you think 8.01, the section referred to was preventing from [sic] introducing the nol pros order, if it is not certified, I can ask that we - I can get – now that they have gotten the book and page from the Supreme Court, they can use that as an original I learned during the break from Ms. Separis. They can use that as an original and I could produce a certified copy and have that in my exhibits.

THE COURT: I think you should do that.[6]

Separis, a court assistant in the circuit court clerk's office, testified that her duties include "providing . . . administrative support" and photocopying. Separis testified that she saw appellant on June 7, 1995, when he "c[a]me into the Clerk's office asking for copies of a file and [she] went to go look for the file for him." Separis gave the files to appellant who "had them for probably fifteen to twenty minutes." Because of other activity in the office, Separis did not watch appellant

_____

[6]Despite the trial judge's belief that it should be done, at no time during the trial did the Commonwealth's attorney introduce or offer "the nol pros order" and "book and page" that she presented was received from the Supreme Court and that the trial judge agreed should be done.

- 8 -

closely.  According to Separis, appellant "asked for certified copies of" the orders in the two cases, however, she "noticed that they were Xeroxed."  Separis testified as follows:

> When [appellant] asked for a certified copy, I told him that I needed to find the original in order to give him a certified copy because all this was was a copy and our office policy is not to give a certified copy of a copy.

Separis also noticed that "most of the contents of the file were copies" and that the returned file "was pretty thin." Appellant told Separis that "his name was Kevin Stevens," that an attorney named Vernon Evans "needed [the copies] right away for an expungement that was going to happen pretty soon," and that he, appellant, could be reached at Evans' office.  Separis also testified about a "book and page" collection in which the clerk's office maintains copies of every document.  The "book and page" collection is accessible to the public.  When Separis looked in "the book and page" compendium, the orders from the two cases "were mysteriously missing."  Separis later met with appellant's probation officer who provided her with a photograph of appellant and "the original that they received in the office from our office of the court orders that were provided in those cases."  Separis identified Commonwealth's exhibit 1, the copy of the order supplied by the probation officer, as "the original sentencing order from case CR 93-321," and Commonwealth's exhibit 2 as "the nol pros order that was in the case CR

93-322."  The trial judge admitted the exhibits without further objections or comments.

Separis testified that, after viewing the photograph provided by Hawkins, she realized that appellant was the person who claimed to be Kevin Stevens.  Separis also inspected the judgment lien books and "observed that there were several pages torn out," including a page containing a judgment written against appellant.

Circuit court assistant Beth Davis testified that she was typing an order relating to Probation Officer Hawkins' letter to the trial judge advising him of appellant's "nonpayment of restitution."  Davis had attached Hawkins' letter to the two files numbered 93-321 and 93-322 and placed the files on the floor.  When appellant entered the clerk's office looking for the files, Davis provided them to Separis.  When appellant returned the files, "the probation officer's letter was gone."  Davis testified about what occurred after appellant returned the files:

> Just at that time when I was looking for the
> probation officer's letter, the first thing
> I did was just open the top file to see if
> maybe it had been slid inside the file and
> that is when I realized at the time that the
> only contents of that file were all copies.
> There were no original signatures of
> anything that was there that I would assume
> would be there before.

Davis telephoned Probation Officer Hawkins and requested a copy of the missing letter to the judge to attach to the order.

Carol Hawkins testified that she was appellant's probation officer for his March 1993 conviction for which "[h]e received a twelve-month, all suspended sentence . . . and two years of probation with some special conditions."  Hawkins identified the letter she wrote to the trial judge.  The letter referenced appellant's name and "Case No.: CR93-321 & 322" and discussed his March 23, 1993 sentence and the fact that he had failed to pay court-ordered restitution.  After the clerk's office contacted her, Hawkins delivered her entire file relating to appellant to the clerk's office.

Assistant Commonwealth's Attorney Norman testified that she represented the state in appellant's June 16, 1995 expungement proceeding.  At that proceeding, Norman disagreed with appellant's contention that the charge was nolle prosequied. According to Norman, the trial judge dismissed the expungement petition after considering arguments from her and appellant. Norman also identified Commonwealth's exhibit 7, a document entitled "Motion to Lessen Sentence" filed on February 8, 1994, in which appellant wrote that "[o]n or about March 23rd, 1993, Defendant was sentenced a [sic] two (2) year probation, and with an order of restitution to be paid."

During the testimony of Separis, the trial court admitted Commonwealth's exhibit 1.  The jury found appellant guilty of both charges.

### E.  Admissibility of Commonwealth's Exhibit 1

#### 1.  The Commonwealth's 5A:18 Argument

The Commonwealth contends that appellant is barred from arguing against the admissibility of the exhibit because he put forth a different argument in his reply brief at the petition stage.  In his petition, appellant contended, inter alia, that Commonwealth's exhibit 1, the uncertified copy of the conviction order contained in the probation officer's file, was not a true copy pursuant to Code § 8.01-391(B) or (C).  This argument encompassed both authentication and certification.  See Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 605-06 (1990) (holding that "authenticated" and "certified" are synonymous terms).  In our order dated August 31, 1998, we granted an appeal on the issue of whether "the trial court err[ed] by not requiring the Commonwealth to establish the contents of [the] missing circuit court order without satisfying[, inter alia, Code] Sections 8.01-389 and 391."  Those code sections relate to the authentication and certification of an official document.  Because this issue was before the trial court and argued in appellant's petition, we will address the merits of the issue.

2.  Analysis and Discussion on the Merits

Code § 8.01-389 provides, in pertinent part, that "[t]he records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record."  "Code § 8.01-389 'codifies as part of the official records exception to the hearsay rule judicial "records" which are properly authenticated.'"  Taylor v. Commonwealth, 28 Va. App. 1, 11, 502 S.E.2d 113, 117 (1998) (citation omitted).

Code § 8.01-391(C) provides:

> If any court or clerk's office of a court of this Commonwealth, of another state or country, or of the United States, or of any political subdivision or agency of the same, has copied any record made in the performance of its official duties, such copy shall be admissible into evidence as the original, whether the original is in existence or not, provided that such copy is authenticated as a true copy by a clerk or deputy clerk of such court.

The above-quoted statutes put forth the generally accepted method for admitting official documents, namely, that they be properly authenticated and/or certified as to their accuracy. Appellant correctly asserts that, absent authentication and/or certification, the Commonwealth was required to follow Code

- 13 -

§ 8.01-392 or Code § 8.01-394 to replace the lost conviction order. Both cited code sections offer methods for replacing a lost original. However, if the Commonwealth was able to sufficiently authenticate the exhibit, it did not need to rely on Code §§ 8.01-392 or 8.01-394.

Our review of the record reveals that the record does not contain sufficient evidence authenticating Commonwealth's exhibit 1. Neither Separis nor Davis testified that they were custodians of the records or that they were personally familiar with the original order.[7] Likewise, the Commonwealth offered no evidence that Hawkins was the custodian of the records or other evidence through Hawkins establishing the exhibit's authenticity.

### 3. Harmless Error

Although the trial court erred in admitting the unauthenticated document, we find such error harmless.

When improper evidence is offered to establish a fact overwhelmingly established by other competent evidence, the improper admission of that evidence constitutes harmless error. See Hall v. Commonwealth, 12 Va. App. 198, 216, 403 S.E.2d 362,

---

[7]Although Separis identified Commonwealth's exhibit 1 as "the original sentencing order from case CR 93-321," the Commonwealth elicited no information establishing the basis of her knowledge, her prior awareness that appellant was convicted in that case, or her firsthand knowledge that the exhibit was accurate.

373 (1991); Williams v. Commonwealth, 4 Va. App. 53, 74, 354 S.E.2d 79, 91 (1987). The harmless error doctrine "enables an appellate court . . . to ignore the effect of an erroneous ruling when an error clearly has had no impact upon the verdict or sentence in a case." Hackney v. Commonwealth, 28 Va. App. 288, 296, 504 S.E.2d 385, 389 (1998) (citation omitted). An error is harmless when a "'reviewing court, can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.'" Davies v. Commonwealth, 15 Va. App. 350, 353, 423 S.E.2d 839, 840 (1992) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)).

In prosecuting appellant for forging and uttering a public record, the Commonwealth was required to prove that appellant forged a public record, namely, the photocopy of the March 23, 1993 order for Case No. 93-321, and attempted to employ as true that forged order. See Code § 18.2-168. Under the common law, forgery "is defined as 'the false making or materially altering'" of a document. Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984) (quoting Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)). To convict appellant, the Commonwealth merely had to prove that the original order for Case No. 93-321 reflected appellant's conviction and that appellant altered the photocopied order in

Case No. 93-321 to reflect that the charge was nolle prosequied. Thus, the precise contents of the original order were not at issue; all the Commonwealth had to prove was an original conviction in Case No. 93-321. This fact could be established by circumstantial evidence.

"'Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Patrick v. Commonwealth, 27 Va. App. 655, 662, 500 S.E.2d 839, 843 (1998) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)). When relying on circumstantial evidence, the Commonwealth need only exclude hypotheses of innocence that flow from the evidence, not those that flow from the imagination of defense counsel. See id.

The record contains a copy of the March 23, 1993 transcript from appellant's trial in Case No. 93-321. At that proceeding, appellant entered an Alford plea after which the trial judge found appellant "guilty in 93-321 of the lesser included offense of unlawful entry in an indictment originally charging him with statutory burglary."

The record also contains a copy of the June 16, 1995 transcript from appellant's show cause hearing in Case Numbers 93-321 and 93-322. The trial judge explained on the record that

- 16 -

the hearing was initiated by Probation Officer Hawkins' March 9, 1995 letter informing him that appellant had failed to pay the court-ordered restitution.  Hawkins identified Commonwealth's exhibit 4 as a copy of the letter sent to the trial judge.  At the top of the letter, Hawkins referenced Case Numbers 93-321 and 93-322.  At the hearing, appellant admitted he had not completed the special term of his probation.

Moreover, on February 8, 1994, appellant filed a "Motion to Lessen Sentence" in the trial court.  He referenced his motion with Case Numbers CR93-321 and CR93-322.  In that motion, appellant wrote the following:

> On or about March 23rd, 1993, Defendant was
> sentenced a [sic] two (2) year probation,
> and with an order of restitution to be paid.

Finally, Assistant Commonwealth's Attorney Norman testified that, at the June 16, 1995 expungement proceeding, she told appellant that Case Number 93-321 had not been nolle prosequied.  At that time, she told appellant that "it is [presently] across the hall on the court's docket for a revocation hearing."

The record contains substantial circumstantial evidence establishing that the missing order in Case Number 93-321 was an order of conviction, not an order of nolle prosequi.  Because sufficient evidence established that the original order was a conviction order, the Commonwealth did not need to have the original order admitted or recreated to prevail.  Accordingly,

- 17 -

the admission of the unauthenticated copy of Commonwealth's exhibit 1 was harmless error.

## II.

### THE FEBRUARY 6, 1997 ORDER

#### A. Background

On April 29, 1996, at the conclusion of the evidence, the jury found appellant guilty of forgery and uttering and fixed punishment at two years for each offense. The trial judge sentenced appellant at that time to "two years in the penitentiary" for each conviction and ruled that "[t]hese two sentences will run consecutive to each other." The final order was entered on June 14, 1996 and was silent as to how the sentences were to run.

On September 4, 1996, appellant filed a "Motion to Modify Sentence." In his motion, appellant stated that he "has not been transferred to the Department of Corrections as of the date of this motion, and pursuant to section 19.2-303, Code of Virginia, this Court maintains jurisdiction over the judgments in the above cases to modify the terms of the sentencing orders."

In a letter to Circuit Court Judge Newman dated December 19, 1996, and entered in appellant's circuit court file on December 20, 1996, appellant wrote the following:

> <u>I have been transferred to the Department of Corrections on September 11, 1996</u>, and the

- 18 -

> ability to correspond with the Court has
> been impaired.

(Emphasis added.)

On September 19, 1996, the trial judge entered an order stating that the two sentences imposed for forgery and uttering "are hereby directed to run concurrent."

On February 6, 1997, the trial judge entered an order vacating and setting aside the September 19, 1996 order.  The trial judge explained that the "order of September 19, 1996 was entered in error."

### B.  Discussion and Analysis

Code § 19.2-303 provides, in pertinent part:

> If a person has been sentenced for a felony
> to the Department of Corrections but has not
> actually been transferred to a receiving
> unit of the Department, the court which
> heard the case, if it appears compatible
> with the public interest and there are
> circumstances in mitigation of the offense,
> <u>may, at any time before the person is
> transferred to the Department, suspend or
> otherwise modify the unserved portion of
> such a sentence</u>.

(Emphasis added.)

"By its explicit terms, [Code § 19.2-303] permits a trial judge to retain jurisdiction to suspend or modify a sentence beyond the twenty-one day limit of Rule 1:1 <u>only if the person sentenced for a felony has not been transferred to the Department of Corrections</u>." <u>D'Alessandro v. Commonwealth</u>, 15 Va. App. 163, 168, 423 S.E.2d 199, 202 (1992) (emphasis added).

- 19 -

"[T]he burden of proving appellate jurisdiction rests upon the appellant."  Id.

The record contains no documents or transcripts showing that a hearing was conducted on either motion prior to entry of the orders.  "It is basic that an appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly."  Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part, 240 Va. ix, 396 S.E.2d 675 (1990).

Not only did appellant fail to establish that the trial court had jurisdiction over his case on September 19, 1996, when it entered the order, the record shows that appellant was transferred to the Department of Corrections on September 11, 1996, eight days before entry of the first order.  In the absence of proof that appellant had not been transferred to the custody of the Department of Corrections, and in light of proof to the contrary, appellant failed to prove on this record that the trial judge had authority to act on September 19, 1996.  See D'Alessandro, 15 Va. App. at 168, 423 S.E.2d at 202.  Because the trial court lacked jurisdiction to enter the September 19, 1996 order, that order was void.  Accordingly, the February 6, 1997 order vacating the void order was also void.

For the reasons stated, appellant's convictions are affirmed.

<u>Affirmed.</u>