COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Duff
Argued at Richmond, Virginia


GERALD W. BOWMAN, S/K/A
 GERALD WESLEY BOWMAN
                                    OPINION BY
v.  Record No. 2168-97-2       JUDGE JAMES W. BENTON, JR.
                                  AUGUST 18, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                    William L. Wellons, Judge

          Steven B. Novey, Assistant Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Gerald Wesley Bowman was convicted of four counts each of

forgery and uttering, in violation of Code § 18.2-172, and four

counts of petit larceny, in violation of Code § 18.2-96.  On

appeal, Bowman contends the trial judge erred in admitting the

testimony of the deceased bank account holder's executor that the

account from which the checks were drawn had been closed by the

account holder three years earlier.  Bowman also contends the

evidence was insufficient to convict him of forgery.  We hold

that the testimony of the executor was based on inadmissible

hearsay and that the trial judge committed reversible error in

admitting this evidence.  Therefore, we reverse the convictions

and remand for a new trial.

The evidence proved that Bowman negotiated three $40 checks at Gene's Orange Market on October 4, 1996. All the checks were payable to Bowman, contained the purported signature of Virginia Ford, and were drawn on Ford's First Federal Savings and Loan checking account. A cashier testified that she saw Bowman write one of the checks entirely in the store and saw him endorse all three checks.

The next day, Bowman negotiated a check at the Country Mart in the amount of $60. The check was also payable to Bowman and drawn on Ford's account. The manager of Country Mart testified that Bowman said he had performed work for Ford and wanted to cash the check. The check was already written when Bowman endorsed it.

When the checks were presented for payment, First Federal Savings and Loan refused payment and stamped each of the checks "ACCOUNT CLOSED." The checks, which were entered into evidence, contained no indication of the date when the account had been closed.

Jerome Betts, Ford's cousin and the executor of her estate, testified that Ford died on June 7, 1996, four months prior to Bowman's negotiation of the checks. Betts testified that he had known Ford for forty-six years, that he was familiar with Ford's handwriting, and that the signatures on the four checks, purporting to be Ford's signature, were not those of Ford. Betts

also testified that he knew Bowman and had not given Bowman permission to use any of Ford's checks.

Over defense counsel's objection, Betts testified that the "particular checking account [from which these checks were drawn] had been closed in 1994." Betts testified that he had "personal knowledge" of Ford's finances because Ford had given him a power of attorney during her lifetime and named him executor of her will. He also testified that he reviewed Ford's finances.

On cross-examination, Betts testified that he went with Ford to the First Federal Savings and Loan in December 1994 and waited in the car while Ford went inside the bank. Over defense counsel's hearsay objection, Betts testified that he "was aware of the fact" that Ford had closed her account and that he "had discussed it" with Ford. The trial judge permitted the prosecutor to lay a further foundation for Betts' testimony:

Q. Did you go to the bank on the checks in question?

A. Yes, I was contacted by the bank.

Q. Okay. And were the checks honored to your knowledge?

A. No, they were not.

Q. You reviewed all of her finances during your position as administrator for her estate?

A. I think I gave the investigator at the bank -- the lady at the bank is supposed to have produced the said date that the account was closed and all the information.

Q. I guess what I'm trying to ask is do you have personal knowledge by going to the bank

that the account was closed?

A.  Yes, I do.

Q.  And you reviewed her bank statements, correct?

A.  Yes, I did.

Q.  The account was closed?

A.  It was closed.

Q.  It had been closed for three years?

A.  Yes, sir.

The trial judge overruled defense counsel's objection and allowed the responses to be admitted into evidence.  At the conclusion of the evidence, the trial judge found Bowman guilty of all twelve charges.

## II.

Bowman contends the trial judge erred in admitting Betts' testimony that Ford had closed her checking account in 1994.  He argues the testimony was hearsay.  The Commonwealth contends that Ford's executor could testify pursuant to Code § 8.01-397 concerning any matter to which Ford could have testified.

Hearsay is "testimony given by a witness who relates not what he knows personally, but what others have told him or what he has heard said by others."  Cross v. Commonwealth, 195 Va. 62, 74, 77 S.E.2d 447, 453 (1953) (citation omitted).  "Hearsay evidence is inadmissible at trial unless it falls into one of the recognized exceptions to the hearsay rule."  West v. Commonwealth, 12 Va. App. 906, 909, 407 S.E.2d 22, 23 (1991).

- 4 -

Code § 8.01-397 provides in pertinent part as follows:
    In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, . . . whether such adverse party testifies or not, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party.

In accordance with well established principles, "when analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (citation omitted).
    [W]hen a statute . . . is clear and unambiguous . . . a court may look only to the words of the statute to determine its meaning. The intention of the legislature must be determined from those words, unless a literal construction would result in a manifest absurdity. Thus, when the legislature has used words of a clear and definite meaning, the courts cannot place on them a construction that amounts to holding that the legislature did not intend what it actually has expressed.

Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 339, 497 S.E.2d 335, 337 (1998) (citations omitted).

By its clear and unambiguous language, Code § 8.01-397 only applies in actions "by or against a person who . . . is incapable of testifying, or by or against the committee, trustee, executor,

administrator, heir, or other representative of the person so incapable of testifying."  We will not extend the statute's application to criminal proceedings in which the "person incapable of testifying" is not a party.  Therefore, we hold that Code § 8.01-397 does not apply to render Betts' testimony admissible.

Betts testified that he had "personal knowledge by going to the bank that the account was closed."  He reviewed Ford's bank statements and learned that the account had been closed for three years.  The Supreme Court of Virginia has defined "personal knowledge" as "knowledge of a fact which a person has himself gained through his own senses and not from others or from information supplied by others."  Fagan v. Commonwealth, 220 Va. 692, 694, 261 S.E.2d 320, 322 (1980).  It is "'[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.'"  Id. (citation omitted).  The information upon which Betts relied to make his statement that the account was closed was information supplied by others and was hearsay.

Ford's statement to Betts that she had closed her account was clearly hearsay.  See West, 12 Va. App. at 909, 407 S.E.2d at 23.  The Commonwealth did not introduce the bank statements into evidence.  No bank official testified concerning the account.  Instead, the Commonwealth sought to have Betts testify concerning the information he derived about the status of the account from

his examination of the statements and his conversation with Ford. "Statements otherwise objectionable as hearsay are not rendered admissible because they have been reduced to writing." See Williams v. Commonwealth, 200 Va. 413, 417, 105 S.E.2d 829, 832 (1958). The Commonwealth cannot use Betts' testimony concerning what was contained in the bank statements to circumvent the hearsay rule applicable to written documents. See West, 12 Va. App. at 909-10, 407 S.E.2d at 24 (discussing the admissibility of multiple hearsay).

The Commonwealth also relies on Sands v. Commonwealth, 61 Va. (20 Gratt.) 800 (1871), for the proposition that an intimate friend of the deceased can testify to the decedent's affairs. In Sands, the witness was asked whether the deceased "was in good pecuniary circumstances at the time of the date of the bond." Id. at 803. The judge overruled the defendant's objection and the witness was allowed to answer that the deceased "had plenty of money always, and money in bank; was doing a first rate business, and owned six houses and lots." Id. The trial judge also overruled the defendant's objection to the Commonwealth's question of whether the witness, who had stated that he knew the deceased intimately for a number of years and was familiar with the deceased's business and habits, had ever known the deceased to borrow money. Id. The Court held that the trial judge did not err in its rulings on "the admissibility of evidence offered by the Commonwealth to show the pecuniary condition and habits"

- 7 -

of the deceased.  Id. at 821.

The holding in Sands is not dispositive of this case.  The witness in Sands was not testifying to the hearsay statements of the deceased or to information he had gained through a review of the deceased's bank statements.  The witness testified based on his own personal knowledge and observations regarding whether he had ever known the deceased to borrow money and about certain money and property he knew the deceased possessed.

For these reasons, we hold that the trial judge erred in admitting Betts' testimony regarding the date on which Ford closed her bank account.

III.

The Commonwealth further argues that the error was harmless.  We disagree.

A trial judge's admission of hearsay may be harmless error if the content of that testimony is clearly established by other evidence.  See Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979).  However, to be harmless, it must plainly appear "'from the record and the evidence . . . that' the error did not affect the verdict."  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678).  Stated another way, "[a]n error does not affect a verdict [only] if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same."  Id.

- 8 -

No other evidence proved that Ford closed her account in 1994.  The only evidence in the record that the account was closed is the canceled checks themselves, stamped "ACCOUNT CLOSED."  However, the checks do not indicate when the account was closed.  Therefore, the content of Betts' hearsay statements regarding when the bank account was closed was not "clearly established by other evidence."  Schindel, 219 Va. at 817, 252 S.E.2d at 304.

The Commonwealth argues the date the account was closed was unnecessary to the determination of guilt and, therefore, any error in the admission of Betts' testimony regarding when the account was closed was harmless.  Bowman contends the evidence regarding when the account was closed affected the verdict because the trier of fact might have concluded that it was highly unlikely that Ford would have given Bowman permission to sign or negotiate the checks on an account that had been closed.  Bowman argues that without this evidence, the trier of fact may not have drawn such an inference and the verdict would not necessarily have been the same.

To sustain a conviction for forgery in violation of Code § 18.2-172, the Commonwealth must prove that the accused falsely made or materially altered a writing, without the authority to do so, and did so to the prejudice of another's right.  See Code § 18.2-172; Lewis v. Commonwealth, 213 Va. 156, 157, 191 S.E.2d 232, 233 (1972); Lawson v. Commonwealth, 201 Va. 663, 667, 112

S.E.2d 899, 901 (1960). The trial judge had to determine whether the Commonwealth proved beyond a reasonable doubt that Bowman did not have authority from Ford to sign and present the checks. "Where one signs the name of another to a check it is presumed, in the absence of other evidence, that he has authority to do so. The burden was upon the Commonwealth not only to prove that [Bowman] signed [Ford's] name as maker of the check but the evidence must establish that this was done without authority." Lewis, 213 Va. at 157, 191 S.E.2d at 233.

In Lewis, the defendant's convictions for forgery and uttering rested solely on the testimony of a bank teller that the body and signature on the check which the defendant attempted to cash were in the defendant's handwriting. Id. at 156, 191 S.E.2d at 233. The purported maker of the check was not called as a witness "and the record fail[ed] to account for his absence. The record even fail[ed] to disclose whether [the maker] had an account at the bank." Id. Based on this evidence, the Court ruled that the Commonwealth failed to meet its burden of proving that the defendant did not have authority to sign the maker's name to the check. Id. at 157, 191 S.E.2d at 233.

In Lawson, the person whose checks the defendant signed testified at trial that the defendant "probably did have authority, or that possibly she had given him express authority, but at best she did not remember whether she had or not [, and] . . . in her testimony she indicated that she . . . was rather of

opinion that he had a right to have it."  210 Va. at 667, 112 S.E.2d at 901.  Thus, the Court held that her "evidence in this case was too indefinite and uncertain to warrant [the defendant's] conviction."  Id.

The Commonwealth had the burden to prove beyond a reasonable doubt that Bowman did not have authority to endorse Ford's name on the four checks.  See id. at 666, 112 S.E.2d at 901.  To overcome the presumption that Bowman had authority from Ford to negotiate these checks for payment, the evidence of the date on which the account was closed was material.

The Commonwealth also argues that any authority Ford may have given to Bowman to sign her name to the checks terminated by operation of law upon Ford's death.  See Sturgill v. Virginia Citizens Bank, 223 Va. 394, 398, 291 S.E.2d 207, 209 (1982) (noting that "[b]ecause the death of a principal terminates an agent's authority . . . , [the agent] had no authority to write checks" on the principal's account after her death); see also King, Adm'x v. Beal, 198 Va. 802, 808-09, 96 S.E.2d 765, 770 (1957) (noting that the authority of arbitrator terminates by operation of law upon death of party or death or arbitrator).  Although this civil agency principle is instructive, in a criminal proceeding charging forgery and uttering, which require intent to defraud, the Commonwealth must establish that the defendant knew that his or her authority to sign and present the checks had terminated.  See Sylvestre v. Commonwealth, 10 Va.

App. 253, 258-59, 391 S.E.2d 336, 339 (1990) (ruling that "[i]ntent to defraud means that the defendant intends to 'deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property'") (citation omitted).

One cannot possess the intent to defraud when one does not have knowledge that one's authority has terminated. If a defendant in fact had authority and believed he or she was still acting under legitimate authority, i.e., lacking knowledge that the source of that authority has died, he or she cannot possess the requisite fraudulent intent. No evidence in the record proved that Bowman knew Ford had died prior to the time Bowman offered the checks.

For these reasons, we hold that the trial judge's erroneous admission of the hearsay evidence affected the verdict and was reversible error. Accordingly, we reverse Bowman's convictions and remand the case for a new trial if the Commonwealth be so advised.

Reversed and remanded.