COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


JASON D. MANAS

MEMORANDUM OPINION[*] BY
v.    Record No. 2789-00-1        JUDGE ROBERT P. FRANK
                                  SEPTEMBER 25, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
              William C. Andrews, III, Judge

        Stephen K. Smith for appellant.

        Steven A. Witmer, Assistant Attorney General
        (Randolph A. Beales, Acting Attorney General,
        on brief), for appellee.



     Jason D. Manas (appellant) was convicted in a bench trial of

two counts of forgery, in violation of Code § 18.2-172, two counts

of uttering, in violation of Code § 18.2-172, and one count of

obtaining money by false pretenses, in violation of Code

§ 18.2-178.  On appeal, appellant contends the trial court erred

in finding the evidence sufficient to convict him of one forgery

and one uttering count.[1]

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Appellant does not challenge the conviction for obtaining
money by false pretenses nor the convictions involving the
forging and uttering of William Allen's check.

## I.  BACKGROUND

On February 8, 1999, appellant, who owed Monica Donovan money, told Donovan that his uncle owed him money.  Appellant gave Donovan check #2632 in the amount of $900, drawn against the joint checking account of Linda A. Poppie and Matthew M. Poppie at Virginia Educators Credit Union, Inc. and payable to Donovan. Matthew Poppie was appellant's uncle.

When appellant gave the check to Donovan, it was already made out to her and signed with the name "Matthew M. Poppie."

Appellant told Donovan that since he had no bank account nor any identification, he could not cash a check payable to himself. Appellant suggested to Donovan that she could cash the check for him, keep what was owed to her, and give him the difference. Donovan cashed the $900 check, kept the $400 due her, and gave appellant $500.

Appellant's activities came to the attention of Linda Poppie when she noticed money was missing from her checking account.  She subsequently discovered a book of her checks was missing.  She gave no one permission to take any of her checks.  Between February 8 and 9, 1999, appellant had access to the Poppies' home.

Linda Poppie identified check #2632 as a check from her missing checkbook.  She did not make out the check nor did she give anyone permission to make out the check.  The signature on the check was not that of her husband, Matthew M. Poppie.

-

Previously, on January 8, 1999, appellant had called Sherry Duncan and asked her to cash a check for him.

Duncan picked up appellant, and they drove to a location where he clamed he and his grandfather worked. Appellant entered the building and quickly returned, telling Duncan that he had the check, "and he said his grandfather had made it to [Duncan] so [she] could cash it for him because he didn't have any identification or a banking account." The check was already made out when appellant gave it to Duncan. Duncan cashed the check and gave the proceeds to appellant.

On January 8, 1999, William Allen, appellant's grandfather and Linda Poppie's father, was visiting Linda from his home in Florida. When he returned to his home a month later, he received his bank statement and discovered a lot of "high dollar" checks had been written against his account for a total of $2,800. Upon investigation, William Allen and his wife discovered that nine checks had been torn out of the back of their checkbook while they were in Virginia.

Allen had not given appellant permission to take his checks, to sign his name, or to use the account. Allen identified the check that Duncan cashed as one of his checks stolen from Linda Poppie's house.

At the conclusion of the Commonwealth's case, appellant moved to strike the evidence on sufficiency grounds. Appellant rested without putting on any evidence and renewed his motion to strike.

-

The trial court denied both motions and convicted appellant of each of the five indictments.

## II.  ANALYSIS

> "Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.  We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion."  Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).
>
> Furthermore, "[t]he credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination.  In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted).

Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000).

Forgery is "'the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.'"  Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313

-

S.E.2d 394, 395 (1984) (quoting Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)).  Uttering, a separate and distinct offense, is defined as "an assertion by word or action that a writing known to be forged is good and valid."  Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964).

This Court has explained previously the Commonwealth's burden in such cases:

> To sustain a conviction for forgery in violation of Code § 18.2-172, the Commonwealth must prove that the accused falsely made or materially altered a writing, without the authority to do so, and did so to the prejudice of another's right.  See Code § 18.2-172; Lewis v. Commonwealth, 213 Va. 156, 157, 191 S.E.2d 232, 233 (1972); Lawson v. Commonwealth, 201 Va. 663, 667, 112 S.E.2d 899, 901 (1960).  The trial judge had to determine whether the Commonwealth proved beyond a reasonable doubt that Bowman did not have authority from Ford to sign and present the checks.  "Where one signs the name of another to a check it is presumed, in the absence of other evidence, that he has authority to do so.  The burden was upon the Commonwealth not only to prove that [Bowman] signed [Ford's] name as maker of the check but the evidence must establish that this was done without authority."  Lewis, 213 Va. at 157, 191 S.E.2d at 233.

Bowman v. Commonwealth, 28 Va. App. 204, 213, 503 S.E.2d 241, 245 (1998) (emphasis in original).

Here, the issue is whether the Commonwealth proved beyond a reasonable doubt that appellant had no authority to sign Matthew M. Poppie's name to check #2632.

-

Absence of authority may be proven by circumstantial evidence.  "'Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'"  Patrick v. Commonwealth, 27 Va. App. 655, 662, 500 S.E.2d 839, 843 (1998) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)).  "Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong."  Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997).

Appellant correctly cites Lewis v. Commonwealth, 213 Va. 156, 191 S.E.2d 232 (1972) (per curiam), for the presumption of authority to sign a check in the absence of other evidence.  But, Lewis is distinguishable on its facts.  The only evidence before the trial court in Lewis was that "the body and signature on the check which Lewis attempted to cash were in Lewis' handwriting."  Id. at 156, 191 S.E.2d at 233.

One element of Lewis is the same here:  the account holder did not testify.  However, the presumption of authority in this case was rebutted by other compelling evidence.

Between February 8 and 9, 1999, appellant had access to the Poppies' residence.  William Allen was visiting the Poppies during that time.  During that time, checks belonging to the Poppies and to William Allen were stolen.  Linda Poppie gave no one, which the

-

fact finder could infer included her husband, permission to take or use any of her checks. On February 8, 1999, appellant was in possession of checks stolen from Poppie and from Allen. Allen testified he gave no one permission to sign his name.

Appellant asks this Court to find Matthew Poppie stole the check from his wife and then gave it to appellant with permission to sign it. Given the evidence, this "hypothesis of innocence" is unreasonable. See Shaver v. Commonwealth, 30 Va. App. 789, 801, 520 S.E.2d 393, 399 (1999).

It would defy reality to believe appellant had Matthew Poppie's authority to sign the stolen check. Linda Poppie testified she gave no one permission to take any of her checks, which would include #2632. The trial court reasonably could infer from that testimony that her husband also did not have permission to take that check. See Higginbotham, 216 Va. at 352, 218 S.E.2d at 537; Archer, 26 Va. App. at 12-13, 492 S.E.2d at 832.

In determining whether appellant had Matthew Poppie's authority, the fact finder also could consider that William Allen did not authorize appellant to sign his name to his stolen check.

Appellant employed the same scheme for both checks. He told Monica Donovan and Sherry Duncan that since he had no identification and no banking account, he had the maker of the check make the check payable to a third party, not the appellant.

Evidence tending to show an accused is guilty of other crimes of a similar nature "is incompetent and inadmissible for the

-

purpose of showing the commission of the particular crime charged." Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). However, "[e]vidence of 'other crimes' is relevant and admissible if it tends to prove any element of the offense charged. Thus, evidence of other crimes is allowed when it tends to prove motive, intent, or knowledge of the defendant." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998) (citation omitted) (emphasis in original). "In order for evidence that the accused has committed other crimes to be admissible, it need only be relevant to prove a material fact or issue, and its relevance must outweigh the prejudice inherent in proving that an accused has committed other crimes." Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234, aff'd on reh'g en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993) (citation omitted).

Here, whether or not appellant had the authority to sign Matthew Poppie's name is an element of the offense. Code § 18.2-172. See also Bowman, 28 Va. App. at 213, 503 S.E.2d at 245. Evidence that an accused used a similar scheme to commit a crime previously is permissible proof of a defendant's knowledge that he was acting without authority. Wilson, 16 Va. App. at 220, 429 S.E.2d at 234.

Given the parallels between appellant's actions regarding Allen's check and Poppie's check, the evidence that Allen did not give appellant permission to sign the stolen check is additional

-

relevant evidence of guilt in the forgery and uttering of Poppie's check.  Clearly, the Commonwealth excluded any reasonable hypothesis of innocence.

Finding the evidence sufficient to convict, we affirm the judgment of the trial court.

<u>Affirmed.</u>

-