COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Petty and Alston
Argued at Salem, Virginia


CHARLA DENORA WOODING

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1385-09-3                          JUDGE WILLIAM G. PETTY
                                                              MAY 18, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Mark B. Arthur for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


On March 23, 2009, Charla Denora Wooding, the appellant, was convicted in a bench

trial of four counts of forgery, in violation of Code § 18.2-172, and four counts of uttering, in

violation of Code § 18.2-172. On appeal, Wooding argues that the court erred in admitting the

forgery affidavits without the affiant present. She also contends that the evidence was

insufficient to convict her of forgery and uttering. For the following reasons, we disagree and

affirm Wooding's convictions.

I. BACKGROUND

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4

Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In June 2008, SunTrust Bank contacted Dillard and Ruth Markham to inform them of several apparently forged checks drawn on their account. After confirming that the checks were forgeries, Lisa Redford, an employee of SunTrust, had Ruth Markham sign affidavits confirming that the signatures on the suspicious checks were not hers and that she did not authorize anyone else to sign for her. Ruth Markham died before trial so the Commonwealth offered the affidavits in order to establish that the signatures were fraudulent.

Investigator Couch of the Lynchburg Police Department first interviewed the Markhams at their produce stand. He observed Charleston Williams, Jr., an employee of Markham Produce, leaving the premises. Williams entered a green SUV where Wooding was riding as a passenger. Investigator Couch then interviewed the teller at SunTrust, who identified Williams as the person who attempted to pass the fraudulent check. Investigator Couch also reviewed video surveillance that showed both Williams and Wooding as the individuals who had each cashed several of the missing checks. Investigator Couch additionally interviewed a cashier of Quick Stop, where some of the Markham checks had been cashed. After speaking with the cashier, Investigator Couch prepared a photo lineup; the cashier identified Wooding as the person who cashed the checks.

Investigator Couch arrested Williams and later interviewed him regarding the Markham checks. Williams admitted that, while mowing the Markhams' yard, he noticed a book of checks lying on the ground. Williams kept the book of checks and used the money to pay his bills. On July 22, 2008, Investigator Couch interviewed Wooding while she was in police custody. When Investigator Couch asked Wooding if she signed the checks, Wooding replied, "I suppose." Wooding admitted that she obtained the checks from Williams and had split the money with him.

At trial, Lisa Redford explained SunTrust's procedures to report fraudulent activity. Redford testified that when a customer reports that checks have been forged, SunTrust

employees examine the account with the customer to determine which checks are suspected to be forged. The employee then contacts the internal fraud department and helps the customer prepare an affidavit. The affidavit states that the signature on the fraudulent check is not the client's signature and that the client did not authorize anyone to sign the check.

Redford testified that the affidavits are prepared in the normal course of business for the bank in order to deal with claims of fraud. Redford completed this process with Ruth Markham for each fraudulent check, and Redford notarized the affidavits. Neither Redford nor any other bank employee informed Ruth Markham that the affidavits would be used in court proceedings.

During trial, Wooding argued that the affidavits of forgery were inadmissible because their admission violated the Confrontation Clause. The trial judge overruled Wooding's objection and admitted the affidavits holding that the documents were non-testimonial business records and, therefore, their admission did not implicate the Confrontation Clause. The trial court convicted Wooding of four counts of uttering and four counts of forgery, and this appeal followed.

## II. ANALYSIS

On appeal, Wooding argues that the trial court erred in admitting Mrs. Markham's affidavits because they violated her right to confrontation under the Sixth Amendment of the United States Constitution and that the evidence was insufficient to establish the crime of forgery and uttering. For the reasons that follow, we conclude that Mrs. Markham's affidavit was not testimonial and therefore admissible into evidence. We further conclude that the evidence was sufficient to establish Wooding forged and uttered several checks in violation of Code § 18.2-172.

A.  Admissibility of the Affidavits

The Confrontation Clause of the Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The United States Supreme Court has interpreted this right to bar "the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity to cross-examination."  Crawford v. Washington, 541 U.S. 36, 53-54 (2004).  Thus, it is clear that "[t]he Confrontation Clause only applies to testimonial hearsay.  'That is because only those statements that are testimonial in nature cause the declarant to be a witness within the meaning of the Confrontation Clause.'"  Crawford v. Commonwealth, 55 Va. App. 457, 477, 686 S.E.2d 557, 567 (2009) (quoting Davis v. Washington, 547 U.S. 813, 821 (2006) (internal quotation marks omitted)).  "Indeed, '[i]t is the *testimonial character* of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the *Confrontation Clause*.'"  Id. (emphasis and modification in original) (quoting Davis, 547 U.S. at 821).

The question of whether a statement is "testimonial," though, is not often easily answered.  The Supreme Court's decision in Crawford "set[s] forth '[v]arious formulations' of the core class of 'testimonial' statements . . . but found it unnecessary to endorse any of them, because 'some statements qualify under any definition.'"  Davis, 547 U.S. at 822.  While we recognized in Crawford v. Commonwealth that the Supreme Court has recently stated that "affidavits 'fall within the core class of testimonial statements' subject to the Confrontation Clause . . . ," we noted that the Supreme Court has not gone as far "as to hold that all affidavits are *per se* testimonial."  55 Va. App. at 478, 686 S.E.2d at 567 (quoting Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 (2009)).

- 4 -

In Crawford v. Commonwealth, we adopted the primary purpose test established in Davis: "[s]tatements . . . are testimonial when the circumstances objectively indicate . . . that the *primary purpose* of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 55 Va. App. at 478, 686 S.E.2d 567 (emphasis added). Indeed, we stated that "we see no principled reason to conclude that a hearsay statement obtained for a purpose *other than* criminal prosecution should be treated differently with respect to the *Confrontation Clause solely* because it takes the form of an affidavit." Id. at 479, 686 S.E.2d at 568 (emphasis in original). Thus, we concluded that "the mere fact that the statements in [that] case are contained within an affidavit is not dispositive to our analysis, and we must still look to the 'primary purpose of the interrogation' to determine whether the statements are testimonial or nontestimonial in character." Id. (quoting Davis, 547 U.S. at 822.)

While "[m]ost hearsay exceptions" generally cover "statements that by their nature [are] not testimonial," it is "not because they qualify under an exception to the hearsay rules" that they are "admissible absent confrontation." Melendez-Diaz, 129 S. Ct. at 2539. Rather, statements such as business records or public records are "generally admissible absent confrontation . . . because . . .—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Id. at 2539-40; see also Riner v. Commonwealth, 268 Va. 296, 323, 601 S.E.2d 555, 570 (2004) (stating that "business records are a type of hearsay 'that by their nature [are] not testimonial'" (quoting Crawford, 541 U.S. at 56)); Jasper v. Commonwealth, 49 Va. App. 749, 754, 644 S.E.2d 406, 409 (2007) (holding the Sixth Amendment right to confrontation does not apply to business records). This general rule applies unless "the regularly conducted business activity is the production of evidence for use at trial," in which case the statements are testimonial. Melendez-Diaz, 129 S. Ct. at 2538.

Thus, it is not the fact that the challenged statement is contained in an affidavit that is dispositive, but rather the primary purpose for which the affidavit was prepared. An affidavit is testimonial hearsay if it is prepared primarily for litigation, id. at 2540, and it is a non-testimonial business record if it is prepared primarily "for the systematic conduct of the business as a business." Palmer v. Hoffman, 318 U.S. 109, 113 (1943). In other words, if the affidavit's "primary utility is in litigating," id. at 114, not in banking, then the affidavit is testimonial. Melendez-Diaz, 129 S. Ct. at 2540; Davis, 547 U.S. at 821; Crawford, 55 Va. App. at 479, 686 S.E.2d at 568. While a business record may be used to establish a past fact in a subsequent trial, its admission into evidence will not offend the Confrontation Clause unless it is prepared primarily for litigation. Accordingly, the ultimate question revolves around the primary purpose for the affidavit's production. Crawford, 55 Va. App. at 479, 686 S.E.2d at 568.

Here, the bank contacted Mr. and Mrs. Markham regarding suspicious activity on their checking account. Mrs. Markham went to the bank and met with Lisa Redford. Mrs. Markham signed several affidavits prepared by the bank in its Fraud/Loss Prevention Department stating that the signatures on the checks were not hers and she had not authorized anyone to sign her name on the checks. The bank's regional security manager testified:

> The bank uses [the affidavits] to determine as to whether or not [it] will give restitution to the client.
> If [the bank] feel[s] as though [the] client did everything they were supposed to do according to those rules and regulations, [the bank] reimburse[s] the client the amount of the loss, as [it] did in this case. And then the bank suffers the loss.

Indeed, this statement is consistent with the requirements of Code § 8.4-406(c) which requires the bank customer to "exercise reasonable promptness in examining the statement or items to determine whether payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of a customer that was not authorized." In other words, it is the bank customer's responsibility to dispute the validity of the forged checks in

- 6 -

order for the bank to reimburse the customer's account. Code § 8.4-406(d) (Commercial code—Bank Deposits and Collections). Thus, the bank absorbs the loss and the customer does not.

The bank security manager further testified that the affidavits are "prepared solely for fraud purposes, for fraud investigation by the bank." Lisa Redford testified that the affidavits of fraudulent transaction were prepared in the normal course of banking business and as "business records that the bank keeps in order to deal with fraud, claims of fraud through the banking system." Once the customer signs the affidavit, the bank provisionally credits the customer's account with the amount fraudulently withdrawn from the account. The affidavit is sent to the bank's Fraud/Loss Prevention Department for a full investigation, and, if the investigation reveals that the money was fraudulently withdrawn, then the bank permanently credits the customer's account.

We have no reason to doubt the fact that the affidavits of fraudulent transactions were business records prepared by the bank, signed by the customer, and retained by the bank for further investigation. Stokes v. Commonwealth, 49 Va. App. 401, 409, 641 S.E.2d 780, 784 (2007) (holding that an "affidavit of forgery is a bank form that is routinely made and kept by the bank when a depositor complains of an unauthorized withdrawal . . . , therefore, . . . [they] were made in the regular course of bank business"). As such, the primary purpose for their production was the systematic conduct of the bank's business and not to prove a past fact in a subsequent criminal proceeding. Thus, we conclude that the trial judge did not err in concluding that the affidavits were not testimonial.

### B. Sufficiency of the Evidence

Wooding also argues that the evidence was insufficient to support her forgery and uttering convictions. On appeal, we will not overturn the trial court's judgment unless it is "plainly wrong or without evidence to support it." Code § 8.01-680. "Code § 18.2-172

- 7 -

provides, in pertinent part, that, '[i]f any person forge any writing . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony.'" Oliver v. Commonwealth, 35 Va. App. 286, 295, 544 S.E.2d 870, 874 (2001) (quoting Fitzgerald v. Commonwealth, 227 Va. 171, 173-74, 313 S.E.2d 394, 395 (1984)). "To sustain a conviction for forgery in violation of Code § 18.2-172, the Commonwealth must prove that the accused falsely made or materially altered a writing, *without the authority to do so*, and did so to the prejudice of another's right." Bowman v. Commonwealth, 28 Va. App. 204, 213, 503 S.E.2d 241, 245 (1998).

Wooding argues that, without the affidavits discussed above, the evidence was insufficient to prove that she did not have permission to sign or cash the checks. However, Wooding conceded at oral argument that the evidence was sufficient to establish the crimes if the affidavits were lawfully admitted. Having determined that the affidavits were lawfully admitted, and considering all of the facts and circumstances of this case, we conclude that the evidence was clearly sufficient.

### III. CONCLUSION

For the foregoing reasons, we affirm Wooding's convictions.

Affirmed.