COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Malveaux and Raphael


DIANDRE WESLEY MOSS

v.     Record No. 0018-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 10, 2024


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

(Edward A. Fiorella, Jr.; Fraim & Fiorella, P.C., on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


Appealing his conviction for second-degree murder and using a firearm in the

commission of a felony, Diandre Wesley Moss argues that the trial court erred by excluding

evidence that he says would have supported his self-defense claim. Moss also contends that the

trial court should have sua sponte instructed the jury on voluntary manslaughter as a

lesser-included offense. Finding such alleged error harmless, we affirm the trial court's

judgment. We dispense with oral argument because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[1]

The victim in this case, Eric Brant, was a long-time friend of Yvonne Mack and was

staying with her on the day that Moss shot and killed him. A witness to the shooting, William

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] We recite the facts in the light most favorable to the Commonwealth, the party that
prevailed at trial. Camann v. Commonwealth, 79 Va. App. 427, 431 (2024) (en banc). "Doing

Morgan, drove his daughter and her boyfriend to Mack's home. When Morgan arrived, his daughter and her boyfriend exited the vehicle. Minutes later, Brant left Mack's house and jumped into Morgan's passenger seat. Brant was carrying a bag with clothes and told Morgan he wanted to leave with him. Brant was not carrying a gun and did not have a gun in his bag. Mack's husband walked out of Mack's house, came to Morgan's window, and spoke with him briefly.

Moss, who lived across the street from Mack, left his house, crossed the street, and approached the passenger side of Morgan's car. Moss tapped on the window, Brant opened the door, and Moss asked Brant to get out of the car to speak with him. Brant asked Moss if they could speak later, but Moss insisted, "I need to talk to you now." Brant exited the vehicle, and the two walked across the street to Moss's porch. Brant left his bag in the car.

A camera captured Moss and Brant talking with each other for a little over one minute. Eventually, Brant sat on Moss's porch. Moss then entered his house, leaving Brant outside. Moments later, Moss came back outside and continued speaking with Brant. After a short conversation, Moss threw a punch at Brant. Moss threw several more punches as Brant tried to defend himself. Moss then drew a gun and fired a single shot into Brant's torso.

Morgan, from his vehicle, saw Moss shoot Brant, which sent Brant stumbling toward the road. Morgan heard Brant say "he shot me" before Brant collapsed. Moss stood still for a moment before tucking his gun into a pocket or his waistband and fleeing the scene on foot. Bystanders loaded Brant into a van and drove away to seek help, eventually finding an

---

so requires that we 'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

ambulance that had been called to the scene. Despite efforts to save him, Brant died from the gunshot wound.

Shanice Lawrence, mother to two of Moss's children, testified for the defense that Moss asked Brant two or three times to "get off" his porch. When Lawrence testified that Brant yelled back that Moss had "a bounty on [his] head," the trial court sustained the Commonwealth's objection and instructed the jury to disregard it. Lawrence testified that Moss's striking and shooting of Brant came after Brant "said what he said." Lawrence denied that Moss ran from the scene, saying "[i]t was maybe a fast walk." Moss could not run, she said, because he had suffered a broken vertebrae from being "jumped and pistol-whipped in front of [his] house." In response to the Commonwealth's objection to that testimony, the court allowed evidence on Moss's back injury but not its cause.

Moss attempted to elicit details from Lawrence about an earlier incident at Moss's house, but the court excluded that testimony after an off-the-record discussion. Moss proffered that he expected Lawrence to testify that Moss's "house had been shot up" days before Brant's death. Moss clarified that there was no evidence that Brant was the shooter in that incident, but Moss proffered that the earlier shooting helped explain Moss's mental state when he shot Brant. The court sustained the Commonwealth's relevance objection, finding that the probative value of that evidence was "far outweighed" by its possible prejudicial effect.

Testifying on his own behalf, Moss explained that he had approached Brant to ask if he had taken cigarettes from Moss's mailbox. When Moss was asked if Brant made threatening statements, the Commonwealth lodged a hearsay objection. The court excluded the testimony on a different ground that the court itself raised—that testimony about what Brant said would

violate the "dead man's statute."[2] Moss did not disagree and proffered no other details about Brant's alleged threats.

Moss testified that he feared Brant and that Brant had a gun in his lap when sitting in Morgan's car. Moss said that, after he repeatedly asked Brant to leave, Moss went inside his house, grabbed a gun, and came back outside. Moss claimed that he intended to retrieve his children from the yard, return inside his house, and call the police. But Moss said that Brant "came at [him]" and threatened him again. Moss said that he pointed his gun at Brant and shot him only because Moss "was in fear for [his] life."

At the charging conference, the court accepted the Commonwealth's instruction that defined first-degree murder and that listed second-degree murder as a lesser-included offense. The instruction did not address voluntary manslaughter. Moss did not object to that instruction and did not request a voluntary-manslaughter instruction. Over the Commonwealth's objection, the court agreed to give an instruction on justifiable self-defense, telling the jury that "[i]f you believe that the defendant was without fault in provoking or bringing on the fight or difficulty . . . you shall find the defendant not guilty."

The jury found Moss guilty of second-degree murder and use of a firearm in the commission of a felony. After obtaining new counsel, Moss moved to set aside the verdict.

In support of that motion, Moss argued that the trial court erred by excluding Brant's threatening statements and the evidence of the prior shooting at Moss's house. For the first time, Moss proffered the complete contents of Brant's alleged threats, explaining that Brant "knew that the Bloods had placed a bounty on Moss's head" and that Brant had "referenced [the bounty]

---

[2] Code § 8.01-397, sometimes called the "dead man's statute," limits the use of statements made by individuals who are incapable of testifying when those statements are uncorroborated. The statute, by its own terms, does not apply to criminal cases "in which the 'person incapable of testifying' is not a party." *Bowman v. Commonwealth*, 28 Va. App. 204, 210 (1998).

immediately before he was shot."  Brant also allegedly told Moss that he would "cash that check," referring to the bounty.  Moss argued that the earlier shooting and the beating that caused Moss's injury were relevant because they were connected to the alleged bounty.  Moss also argued for the first time that his trial counsel should have requested a voluntary-manslaughter instruction.

The court denied Moss's motion to set aside the verdict at the sentencing hearing, but the transcript of that hearing is not part of the record on appeal.[3]  The court sentenced Moss to 28 years' incarceration with 7 years suspended.  Moss noted a timely appeal.

ANALYSIS

*I. Evidentiary Rulings (Assignments of Error 1 and 2)*

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Moss argues that the trial court erred in excluding evidence of both Brant's threats as well as the earlier shooting incident at Moss's house.  Moss contends that this error affected both the court's decision to overrule Moss's motion to set aside the verdict and Moss's rights at trial.[4]

---

[3] Although Moss belatedly filed the transcript, he did so nearly two months after the 60-day deadline specified in Rule 5A:8(a), and he did not seek an extension of time for the late filing.  Accordingly, the sentencing transcript is not "part of the record" on appeal.  Rule 5A:8(a).

[4] The Commonwealth argues that Moss has not preserved any arguments relating to the motion to set aside the verdict because the record does not contain a ruling on that motion.  We assume without deciding that Moss's non-constitutional arguments for setting aside the verdict are preserved.  We agree with the Commonwealth, however, that Moss did not preserve his

We need not decide whether the trial court abused its discretion by excluding that evidence because any such error was harmless. *See* Code § 8.01-678.

An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." *Carter v. Commonwealth*, 293 Va. 537, 544 (2017) (quoting *Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015)). "Under the harmless error doctrine, if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'" *Id.* at 545 (alterations in original) (quoting *Shifflett*, 289 Va. at 12). In analyzing non-constitutional harmless error, we ask whether "we can be sure that [the error] did not 'influence the jury' or had only a 'slight effect.'" *Id.* (quoting *Shifflett*, 289 Va. at 12).

Any error by the trial court in excluding Moss's evidence was harmless because Moss's self-defense claim was unsustainable.[5] Virginia recognizes two types of self-defense: justifiable and excusable. *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022). Justifiable self-defense, or self-defense without fault, "occurs when the accused is '*without any fault on his part in provoking or bringing on the difficulty*.'" *Id.* (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)). Excusable self-defense, or self-defense with fault, "occurs when the accused is at 'some fault in the first instance in provoking or bringing on the difficulty' but, when attacked, he 'retreats.'" *Id.* at 617 (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). The trial court here instructed the jury only on justifiable self-defense, not excusable self-defense. Since

---

argument that the trial court's evidentiary rulings violated his Sixth Amendment right to a defense. Moss did not raise that argument below, either at trial or in his motion to set aside the verdict.

[5] Moss's evidence may have been relevant to a voluntary manslaughter theory, but Moss did not request one at the charging conference. And as explained below, Moss's argument that the trial court should have raised that instruction on its own is meritless. Thus, we analyze harmless error only in the context of Moss's self-defense claim.

- 6 -

no party objected to that instruction, it has become the law of the case, binding on appellate review. *See Smith v. Commonwealth*, 68 Va. App. 399, 413 (2018). Thus, to validate Moss's self-defense claim, the jury would have needed to find that Moss was without any fault in provoking the conflict with Brant.

Moss cannot make that showing because the evidence was overwhelming that he played at least some role in provoking the conflict. Moss first approached Brant to ask him about the missing cigarettes. Moss spoke with Brant for a while before walking inside his house. Moss could have stayed inside and called police, as he testified was his intention. Instead, he ventured back outside and threw the first punch. He then drew his gun and shot Brant. Even crediting Moss's explanation that he needed to step outside to call in his children, there was still no need for him to use deadly force in the face of mere verbal threats. Indeed, even assuming that Moss truly believed that Brant was armed, the evidence failed to show that Moss played *no* role "in provoking or bringing on the difficulty." *Washington*, 75 Va. App. at 617 (quoting *Avent*, 279 Va. at 199). In short, any error in excluding the evidence was harmless because the evidence was overwhelming that Moss bore at least some fault in bringing about Brant's death.

## II. Lesser-Included Offense Instruction (Assignment of Error 3)

We also reject Moss's claim that the trial court erred by failing sua sponte to grant a voluntary-manslaughter instruction when Moss did not ask for one. "[A] circuit court ordinarily does not have an affirmative duty to give a jury instruction on a particular legal principle when a criminal defendant fails to request that the jury be instructed on that principle." *Commonwealth v. Jerman*, 263 Va. 88, 93 (2002). That rule also applies in the context of instructions on lesser-included offenses. *See Chittum v. Commonwealth*, 211 Va. 12, 17 (1970) (affirming conviction where defendant failed to request lesser-included offense instruction at trial and raised the issue for the first time on appeal).

By not requesting the instruction himself, Moss waived any argument that the court should have given it. *See* Rule 5A:18. "[T]he contemporaneous-objection rule . . . 'exists to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.'" *Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019) (quoting *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 579 (2017)). Moss cites no authority to excuse his failure to object. The cases on which he relies—*Dandridge v. Commonwealth*, 72 Va. App. 669 (2021), and *Connell v. Commonwealth*, 34 Va. App. 429 (2001)—involved the failure to grant an instruction that the defendant had actually requested, not the failure to give an instruction sua sponte that was never requested.

CONCLUSION

We find no basis to disturb the trial court's judgment.

*Affirmed.*