COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Ortiz, Causey and Callins
Argued at Lexington, Virginia


REBECCA ELIZABETH BARNWELL

MEMORANDUM OPINION[*] BY
v.        Record No. 1883-24-3              JUDGE DANIEL E. ORTIZ
JANUARY 13, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Rebecca Elizabeth Barnwell of two counts of forgery, two

counts of uttering, and two counts of obtaining money by false pretenses.  It sentenced her to 30

years' incarceration, with 27 years and 18 months suspended.  On appeal, Barnwell challenges

the sufficiency of the evidence, arguing the complaining witness lacked credibility.  She further

contends that the trial court abused its discretion when it denied her an appeal bond.[1]  Finding no

error, we affirm the convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Barnwell previously challenged the denial of the appeal bond to this Court.  By order
entered January 6, 2025, the motion for bond was denied.  We did not revisit our prior ruling.  At
oral argument, counsel for Barnwell noted she has since been released.

BACKGROUND[2]

Barnwell was a part-time housekeeper for Joanna "Jody" Barnes in 2022.[3] Barnes occasionally enlisted Barnwell's help in filling out the payee and amount portions of her checks, but Barnes never gave Barnwell permission to sign Barnes's name on any check.

In July 2022, Barnes contacted her bank because she did not receive several monthly account statements. When she inquired, the bank provided the missing statements. After reviewing the statements, Barnes noticed "some unusual charges" on her account. The statements showed four checks payable to "Cash" and three payable to "Rebecca Barnwell." All checks bore Barnwell's endorsement. Barnes "always" went to the bank herself if she was getting cash and did not recall sending Barnwell to the bank for her. When Barnes asked Barnwell about the checks, Barnwell said "she didn't do it." Barnes reported the fraudulent checks to the bank and contacted Henry County Sheriff Investigator Alvin Hagwood.

Investigator Hagwood reviewed surveillance video footage from the bank when the checks were negotiated and analyzed the checks in question. He spoke with Barnwell, who claimed that Barnes gave her permission to use the disputed checks. She added that Barnes often sent her on household errands with the checks. Barnwell was indicted for forgery, uttering, and obtaining money by false pretenses for each of the seven checks. She was released on an unsecured bond pending trial.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[3] Parts of the record in this case were sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion; the rest of the record remains sealed. *Id.*

At trial, Barnes denied writing or giving Barnwell permission to write five of the checks, all of which bore Barnes's alleged signature and Barnwell's endorsement.[4]  They were:

- Check 339 written for $2,000, payable to "cash," with a memo of "cash 4 Jody."

- Check 340 written for $650, payable to Barnwell, with no memo.

- Check 342 written for $1,000, payable to Barnwell, with a memo of "580 work, 420 loan."

- Checks 346 and 352 were both written for $2,000, payable to "cash," with a memo of "cash 4 Jody."

Barnes also acknowledged her authentic signature on medical records offered by the defense.  Barnes said that she kept her checkbook in her purse or on a counter and that Barnwell knew where to find it.  She could not remember how she paid Barnwell, but thought it was "probably by a check."

Following the Commonwealth's evidence, Barnwell moved to strike, arguing that Barnes was unable to recall specific events and people and that Barnes's alcohol use caused her to forget authorizing Barnwell's use of the checks.  The trial court denied the motion, finding that the "credibility of [Barnes] and what she may or not remember" were not considerations for the court and that Barnwell did not deny receiving the money at the bank.  It found that the evidence was sufficient to go forward.

Barnwell testified that she worked for Barnes from October 2001 to July 2002.  When prompted, she corrected, saying it was from 2021 to 2022.  Barnwell said she worked "[s]ometimes . . . seven days a week . . . [s]ometimes . . . eight days a week," but "was living there" at the end.

---

[4] Of the remaining two checks, she thought one "looked like a check [she] wrote" and thought she "may have written" the other one.  Barnes acknowledged that she had signed another check that Barnwell helped write, but emphasized that Barnwell did not have permission to sign her checks.

Barnes paid her $17 an hour, in cash or by check, and Barnwell kept track of her hours in a calendar that she since threw away. Barnwell said that she "[p]robably [worked] [60] hours if [she] got paid for [38]" and that she and Barnes talked "[e]very day" about how much she was being paid. Barnwell admitted that she "[p]robably [had] not" repaid Barnes for the $420 loan denoted on check 342, because Barnes "owe[d] [her] because she didn't pay [her] last paycheck, so technically we're even."

Barnwell said that Barnes's signature varied "depend[ing] on how drunk she [was]." Barnwell endorsed the back of the checks and cashed them at the bank, and claimed she then brought the cash to Barnes, who used the cash to pay the other workers. But, Barnwell admitted that Barnes signed all the checks for the utility bills.

Barnwell testified extensively concerning Barnes's alleged alcohol and substance abuse and related hospitalizations. She also said she sent Barnes's daughter, Lindsey, money from Barnes "all the time." Barnwell said her brother, Bruce Hunt, introduced her to Barnes and that the home was "like a perpetual party house." She quit working because she was unwilling to do some of the "vile" things Barnes asked of her. Barnwell admitted to a prior conviction for a crime of moral turpitude; she was "surprised" to know that her criminal history reported five convictions in Henry, Patrick, and Franklin counties for petit larceny, shoplifting, concealment, and bad checks.

Hunt testified that he had worked for Barnes, that she paid him in cash, and that she occasionally gave Barnwell "her [credit] card" to buy "us all dinner." According to Hunt, Barnes had Barnwell write out checks, which Barnes signed. Hunt also acknowledged that he had 20 felony convictions, one of which was for inducement of perjury.

At the end of all the evidence, Barnwell renewed her motion to strike, arguing that Barnes authorized her to give people money. She cited conflicting testimony and Barnes's hospitalizations, substance use, and lack of clarity as creating reasonable doubt. The trial court agreed that the

evidence was conflicting, but found that the signatures presented as Barnes's on checks 346 and 352 (payable to "cash" for $2,000, written as "cash 4 Jody," and endorsed by Barnwell) were inconsistent with the signatures on other checks and documents that Barnes acknowledged signing. It convicted Barnwell of forgery, uttering, and obtaining money by false pretenses on those two checks.[5]

After review of the pre-sentence report, the trial court found that Barnwell had "no acceptance of responsibility whatsoever, continue[d] to deny" the allegations, and had a criminal history that showed a "pattern of stealing." It sentenced her to five years on each of the convictions for a total of 30 years' incarceration, with 27 years and 18 months suspended. The trial court denied her request for bond pending appeal, but allowed her to report late to the jail. This appeal followed.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). Similarly, when the trial court has resolved credibility issues in favor of the Commonwealth, "those findings will not be disturbed on appeal unless plainly wrong." *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v.*

_____

[5] The trial court acquitted Barnwell of the other charges related to checks 339, 340, and 342 because there was "reasonable doubt and a reasonable explanation offered" for those.

*Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The question on appeal is not if the Court believes the evidence at trial was sufficient, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cappe v. Commonwealth*, 79 Va. App. 387, 398 (2024) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

If "any person forge any writing, . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony." Code § 18.2-172. The statute, which codified the English common law of forgery, defines forgery as "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." *Beshah v. Commonwealth*, 60 Va. App. 161, 169 (2012) (quoting *Fitzgerald v. Commonwealth*, 227 Va. 171, 173 (1984)). Uttering is "an assertion by word or action that a writing known to be forged is good and valid." *Brown v. Commonwealth*, 56 Va. App. 178, 188 (2010) (quoting *Bennett v. Commonwealth*, 48 Va. App. 354, 357 (2006)). Larceny by false pretenses requires proof that the "accused intended to defraud," "that a fraud actually occurred," that "the accused used false pretenses to perpetrate the fraud," and the "false pretenses induced the owner to part with his property." *Reid v. Commonwealth*, 65 Va. App. 745, 748-49 (2016) (quoting *Wynne v. Commonwealth*, 18 Va. App. 459, 460 (1994)).

The intent to defraud "may, and often must, be inferred from the facts and circumstances in a particular case." *Beshah*, 60 Va. App. at 170 (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)). "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). Indeed, the "fact that an instrument was forged, made payable to the defendant, and endorsed by him, is sufficient evidence of the defendant's intent to defraud the drawee." *Fitzgerald*, 227 Va. at 174. "[P]ossession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or *procured it to be forged*." *Id.* (quoting *Laird v. State*, 406 So. 2d 35, 36 (Miss. 1981)). When "one signs the name of another to a check it is presumed, in the absence of other evidence, that he has the authority to do so." *Bowman v. Commonwealth*, 28 Va. App. 204, 213 (1998) (quoting *Lewis v. Commonwealth*, 213 Va. 156, 157 (1972)).

The evidence permitted the trial court to find that Barnwell intentionally forged two $2,000 checks payable to "cash." The memo line on both read "cash 4 Jody," despite Barnwell's assertion that the cash was for Barnes's daughters. Barnwell endorsed each and admitted to cashing them. Barnes denied signing the checks; she explained that she went to the bank herself when she wanted cash. The signatures were inconsistent with those on the other checks and documents Barnes acknowledged signing. Barnwell testified that she and Barnes spoke daily about her pay. Testifying about the $420 loan noted on the memo line of one check, she said that she had not and would not repay it because she and Barnes were "even."

In its findings, the trial court carefully articulated its analysis for dismissing the remaining charges, including the more consistent signatures and finding reasonable doubt because there was a reasonable explanation for them. "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Clark v. Commonwealth*, 78 Va. App. 726, 752 (2023) (alterations in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "By finding the defendant guilty, therefore, the [fact finder] 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Rams v. Commonwealth*, 70 Va. App. 12, 28 (2019) (alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

"While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)). The trier of fact in this situation is "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Maust v. Commonwealth*, 77 Va. App. 687, 703 (2023) (en banc) (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018)). The trial judge found that Barnwell's account of writing checks for Barnes's daughters, then depositing checks into their bank accounts was "not what happened here" and did "not match with the specific mechanism that . . . Ms. Barnwell testif[ied] to." Crediting the Commonwealth's evidence instead, a reasonable finder of fact could conclude beyond a reasonable doubt that Barnwell forged the two checks, uttered them to the bank, and obtained $4,000 by false pretenses.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*